UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Curt. G. W.,<br><br>               Plaintiff,<br><br>    v.<br><br>Martin O'Malley[1], Commissioner of Social Security,<br><br>               Defendant. | Case No. 2:23-cv-01148-DJA<br><br>**Order** |

      Before the Court is Plaintiff Curt G. W.'s brief for remand (ECF No. 8). The Commissioner filed a response (ECF No. 10) and Plaintiff filed a reply (ECF No. 11). Because the Court finds that the ALJ erred at step two, in creating the RFC, and in finding Plaintiff's testimony to be non-credible, the Court grants Plaintiff's brief for remand (ECF No. 8). The Court finds these matters properly resolved without a hearing. LR 78-1.

## **BACKGROUND**

**I.    Procedural history.**

      Plaintiff filed an application for a period of disability and disability insurance benefits on July 14, 2021, alleging disability commencing April 14, 2021. (ECF No. 8 at 3). The Commissioner denied the claim initially and on reconsideration. (*Id.*). Plaintiff requested a de novo hearing before an Administrative Law Judge on May 24, 2022. (*Id.*). The ALJ published an unfavorable decision on November 1, 2022. (*Id.*). The Appeals Council denied Plaintiff's request for review on June 9, 2023, making the ALJ's decision the final decision of the Commissioner. (*Id.*).

---

[1] Martin O'Malley is now the Commissioner of Social Security and substituted as a party.

II.     **The ALJ decision.**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). (AR 70-84). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 14, 2021, the alleged onset date. (AR 73). At step two, the ALJ found that Plaintiff has the following severe impairments: ischemic heart disease and obesity. (AR 73). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (AR 75). In making this finding, the ALJ considered Listing 4.01 and Social Security Regulation ("SSR") 19-2p. (AR 75).

At step four, the ALJ found that Plaintiff has an RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) subject to the following limitations:

> [Plaintiff] occasionally can stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. He occasionally can operate a motor vehicle and work at unprotected heights and can have occasional exposure to vibration and non-atmospheric extremes of cold and heat.

(AR 75).

At step five, the ALJ found that Plaintiff was unable to perform past relevant work but that Plaintiff could perform occupations such as cashier II, sales attendant, housekeeping cleaner, ticket seller, bench assembler. (AR 82). Accordingly, the ALJ found that Plaintiff had not been disabled from April 14, 2021, through the date of the decision. (AR 83).

## **STANDARD**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability.  20 C.F.R.

§ 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not

meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

## ANALYSIS AND FINDINGS.

**I.     Whether the ALJ erred by not finding Plaintiff's back impairment severe.**

   *A.     The parties' arguments.*

Plaintiff argues that the ALJ erred at step two by not finding that Plaintiff's back impairment is severe, despite Plaintiff submitting evidence demonstrating the severity of the impairment. (ECF No. 8 at 5-7). Plaintiff points to evidence and records that he submitted to the Appeals Council to show that the ALJ erred in finding that Plaintiff's back impairment was not severe. (*Id.*). Plaintiff asserts that the Appeals Council considered the evidence without elaboration and concluded that the evidence did not show a reasonable probability that the evidence would change the outcome of the decision. (*Id.*). Plaintiff argues that the Court must consider the evidence he submitted for the first time to the Appeals Council. (*Id.*). Plaintiff concludes that the ALJ's error was not harmless "because proper evaluation of this impairment may warrant additional limitations." (*Id.*).

The Commissioner responds that the step two analysis is not meant to identify the impairments that the ALJ should consider when determining the RFC. (ECF No. 10 at 3-4). Instead, it is merely a threshold determination to screen out weak claims. (*Id.*). So, even if the ALJ omitted Plaintiff's back problems from the list of severe impairments, because the ALJ ultimately decided step two in Plaintiff's favor, Plaintiff was not prejudiced and thus, any alleged error at step two is harmless. (*Id.*).

Plaintiff replies that, contrary to the Commissioner's assertion, the ALJ did not adequately consider all of Plaintiff's medically determinable impairments, including those that are not severe, when assessing Plaintiff's RFC. (ECF No. 11 at 3-5). Plaintiff argues for the first time in reply that, although the ALJ stated that the RFC accounted for Plaintiff's back pain, the ALJ failed to explain how. (*Id.*). Plaintiff argues that no medical opinions analyzed any limitations related to back pain. (*Id.*). So, even if the ALJ's RFC did account for Plaintiff's back pain, the ALJ would have been relying on her lay opinion when coming up with it. (*Id.*).

***B.    Analysis.***

At step two of the sequential evaluation, the ALJ determines which of Plaintiff's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id.* An ALJ must consider all the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims.") (internal citations omitted). The plaintiff bears the burden of proof at step two to show that an impairment qualifies as severe. *Bowen*, 482 U.S. at 146 n.5.

Step two is not meant to identify impairments that should be considered when determining the RFC. *Buck*, 869 F.3d at 1048-49. In fact, in assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." *Id.* "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Finally, if step two is decided in favor of the plaintiff, the plaintiff is not prejudiced and any alleged step two error is harmless. *Id.*

Considering the evidence that Plaintiff submitted to the Appeals Council, the Court finds that the ALJ erred in not finding Plaintiff's back pain to be severe. Indeed, the records that Plaintiff submitted demonstrate that Plaintiff's back pain is not a slight abnormality. Clinical findings from September of 2022 demonstrated broad based disc bulging on the L4-5, and L5-S1

portions of the spine, indicating degenerative disc disease and noted that the disc protrusion contacts the L5 nerve root and the S1 nerve root. (AR 19). The findings also included high-grade foraminal stenosis. (AR 19). On exam, the notes found that Plaintiff had tenderness at his lumbar spine and facet joint, decreased flexion and extension, decreased lateral bending, and decreased rotation. (AR 21). In October of 2022, Plaintiff reported that he received injections, but did not find much relief and still presented with decreased ranges of motion and tenderness. (AR 25, 28). The doctors increased Plaintiff's pain medication. (AR 29). Plaintiff reported in November of 2022 that the increased pain medication was helping. (AR 32).

However, whether the ALJ's error was harmless is a closer question. The ALJ ultimately found step two in Plaintiff's favor and explained that the RFC accounts for any potential back pain. And the RFC does contain postural and movement limitations. The ALJ also noted Plaintiff's request for treatment for his back pain and inconsistent musculoskeletal findings in his medical records when coming up with the RFC. (AR 78) (explaining that although Plaintiff sought treatment for his back pain while reporting to the emergency room for chest pain, his examinations were normal).

On the other hand, as Plaintiff points out, the ALJ did not explicitly state that the RFC accommodated Plaintiff's back pain. And even if the ALJ did make that explicit, the ALJ did not rely on a medical opinion when creating limitations for back pain. But Plaintiff also raises this argument for the first time in reply, depriving the Commissioner of the opportunity to respond.

Ultimately, the Court finds that the ALJ erred and that the error was not harmless. Given the extent of Plaintiff's back pain and the clinical findings in the records Plaintiff submitted to the Appeals Council, the ALJ's finding that Plaintiff's back pain was not severe is not supported by substantial evidence. This error was not harmless because, although the ALJ states that the RFC accounts for Plaintiff's back pain, it is not clear from reviewing the record *how* the RFC accounts for Plaintiff's back pain, particularly because the ALJ did not rely on medical opinions. The Court thus grants Plaintiff's motion to remand on this issue.

**II.     Whether the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's subjective complaints.**

    ***A.     The parties' arguments.***

Plaintiff argues that the ALJ did not specifically identify the testimony he found to not be credible and the evidence that undermined that testimony. (ECF No. 8 at 7-12). One example of this, Plaintiff argues, was the way in which the ALJ mischaracterized the record in stating that Plaintiff only recently reported significant episodes of fatigue and frequently denied weakness and fatigue. (*Id.*). But in reality, Plaintiff reported fatigue as early as April 2021 and consistently reported fatigue thereafter. (*Id.*). The ALJ also stated that Plaintiff did not appear to have been referred to any cardiac rehabilitation program when really, Plaintiff participated in thirty six cardiac rehabilitation program sessions from June 1, 2021 through August 25, 2021. (*Id.*). Plaintiff adds that the ALJ discounted Plaintiff's complaints in part due to the conservative nature of Plaintiff's treatment. (*Id.*). But Plaintiff argues that no doctors suggested a more aggressive form of treatment and the record does not support the proposition that a more aggressive form of treatment was available for a person with ischemic heart disease and obesity. (*Id.*). Plaintiff argues that the ALJ also erred in using Plaintiff's daily activities—namely, his ability to exercise—to discount his subjective complaints. (*Id.*). Plaintiff argues that the ability to exercise—after which exercise Plaintiff testified that he is tired and has to take a one or two hour nap—is not transferrable to a work setting. (*Id.*). Plaintiff concludes by arguing that the ALJ's error in discounting Plaintiff's subjective complaints was not harmless because proper evaluation of Plaintiff's subjective complaints could lead to a different result. (*Id.*).

The Commissioner responds that the ALJ's consideration of Plaintiff's subjective complaints was sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff' testimony. (ECF No. 10 at 4-6). The Commissioner points out that the ALJ noted that Plaintiff's conditions improved with treatment. (*Id.*). Specifically, the ALJ noted that although Plaintiff claimed that his "body has never bounced b[ack]" after cardiac surgery, the record shows that Plaintiff reported "feeling better" to his doctors, and that medical records demonstrated improvement. (*Id.*). Additionally, Plaintiff complained of fatigue and

1 shortness of breath, but also reported losing weight with exercise. (*Id.*). The Commissioner
2 argues that the "ALJ rationally concluded that a person with disabling fatigue and shortness of
3 breath would not be able to exercise enough to lose weight." (*Id.*). The Commissioner adds that
4 the ALJ did not equate Plaintiff's daily activities to a work environment, but noted that Plaintiff's
5 daily activities contradicted his other testimony. (*Id.*).

6 Plaintiff replies that just because some of his records reflect improvement, that does not
7 mean that he can function in a workplace. (ECF No. 11 at 5-6). And even if Plaintiff improved
8 with treatment, Plaintiff argues that the ALJ erred by "discounting the testimony wholesale rather
9 than considering these complaints over different periods." (*Id.*). Plaintiff reiterates that his daily
10 activities "do not undermine his subjective complaints." (*Id.*). Plaintiff adds that "[t]he evidence
11 now of record documents significant involvement of the back," but the ALJ limited her analysis
12 to the subjective complaints that she found severe, which did not include Plaintiff's back pain.
13 (*Id.*).

14 **B. Analysis.**

15 The ALJ must make two findings before the ALJ can find a claimant's pain or symptom
16 testimony not credible. 42 U.S.C. § 423(d)(5)(A) (explaining that "[a]n individual's statement as
17 to pain or other symptoms shall not alone be conclusive evidence of disability" absent additional
18 findings). "First, the ALJ must determine whether the claimant has presented objective medical
19 evidence of an underlying impairment 'which could reasonably be expected to produce the pain
20 or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)
21 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant has
22 produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ
23 must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony
24 regarding the severity of the claimant's symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th
25 Cir. 1996).

26 Because the "grounds upon which an administrative order must be judged are those upon
27 which the record discloses that its action was based," the agency must explain its reasoning.
28 *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Treichler v.*

*Commissioner of Social Security*, 775 F.3d 1090, 1101 (9th Cir. 2014).  The Ninth Circuit thus requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (citing *Bunnell*, 947 F.2d at 346 and *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). That means "[g]eneral findings are insufficient." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (superseded on other grounds); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general'").

An ALJ must specifically identify the testimony he finds not credible and why. *Treichler*, 775 F.3d at 1102-1103.  "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." *Id.* (internal quotations omitted).  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Id.*

Here the Court finds that the ALJ adequately specifically identified the testimony she found not credible and why, however, the ALJ did mischaracterize some of the evidence.  The ALJ identified the testimony she found not credible, specifically, Plaintiff's claims of fatigue, that he could not stand or walk for more than thirty minutes, that he could not lift more than fifteen pounds, that he may fall asleep while driving, and that he experienced dizziness and vertigo.  (AR 76).  The ALJ then pointed to specific portions of the evidence that were inconsistent with Plaintiff's testimony, including Plaintiff's activities of daily living like his exercise.  (AR 77-79).

However, as Plaintiff points out, the ALJ noted that Plaintiff "appears to have only recently reported significant episodes of fatigue."  (AR 78).  But Plaintiff points to notes showing that he reported fatigue as early as April of 2021.  *See* (AR 403) (note dated May 7, 2021 stating that "[p]atient states he is able to ambulate around the house without any issues but still gets fatigued after he walks around the neighborhood"); (AR 441) (note dated May 3, 2021 in which Plaintiff admitted fatigue); (AR 444) (note dated June 9, 2021 in which Plaintiff admitted fatigue); (AR 499) (note dated April 17, 2021 including fatigue in the review of symptoms); (AR

1611) (note dated March 2, 2022, diagnosing fatigue); (AR 1618) (note dated December 15, 2021 diagnosing fatigue); (AR 1621) (note dated November 10, 2021 diagnosing fatigue); (AR 1629) (note dated June 9, 2021 in which Plaintiff admitted fatigue); (AR 1633) (note dated May 3, 2021 in which Plaintiff admitted fatigue); (AR 1666) (note dated May 25, 2022 in which Plaintiff admitted fatigue); (AR 1734) (note dated August 31, 2022 which discussed Plaintiff's fatigue and noted that the provider would withhold beta-blockers for two weeks to see if that was the culprit); (AR 1749) (note dated September 7, 2022 in which Plaintiff noted that he used a walker for fatigue); (AR 1752) (note dated September 21, 2022 in which Plaintiff noted that he used a walker for fatigue).  The ALJ also asserted that Plaintiff "does not appear to have been referred to any cardiac rehabilitation program." (AR 78).  But Plaintiff points to records from a cardiac rehabilitation program that Plaintiff attended for months.  *See* (AR 1270-AR 1377) (notes from Plaintiff's cardiac rehabilitation program dated June 1, 2021 to August 25, 2021).  The Court thus finds that the ALJ erred in discounting Plaintiff's subjective complaints.  The Court remands the case for further proceedings on this issue.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 8) is **granted.**  The case shall be remanded for the ALJ to consider the impact of the records the Plaintiff submitted to the Appeals Council on step-two of the five-step analysis and in creating the RFC.  The case shall also be remanded for the ALJ to re-evaluate the credibility of Plaintiff's subjective complaints with regard to his fatigue and engagement in cardiac rehabilitation.  The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: June 12, 2024

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE